## Loomis, Appellant, *v.* The Commercial Bank of Columbus.

A justice of the peace has jurisdiction of suits against corporations, where the principal of the amount in controversy does not exceed fifty dollars.

Whenever jurisdiction is given to an inferior court, it carries with it all the incidental power necessary to accomplish the object of its jurisdiction.

The statute of 1829 which provides that all writs and process at law or in equity thereafter to be issued against any body or bodies corporate, shall be tested and made returnable in the same manner as such writs and process are tested and made returnable when issued against natural persons, embraces justices of the peace as well as other tribunals, and authorises the justices to proceed against corporations by summons or warrant, the ordinary process of his court.

The circuit judge has the sole power to determine the sufficiency of the petition on which he issues a *certiorari* to bring a cause from a justices' court to the circuit court. The insufficiency of the petition cannot be assigned for error in the appellate court.

-APPEAL from the circuit court for the county of Lowndes.

This suit was commenced by warrant before a justice of the peace, for the sum of forty dollars, upon two bank notes, in the usual form, of twenty dollars each, issued by the Commercial Bank of Columbus. Process was served upon the President and Cashier of the Bank. The appearance of the defendant not being entered by defendant, but default made, the appearance was entered by the plaintiff, and judgment rendered. An appeal was then taken to a jury, both parties came by attorney, and the jury found a verdict for the defendant, as follows: "We the jury find the issues in favor of the defendant, the court not having jurisdiction in the case." The plaintiff then obtained a *certiorari* from the circuit court upon a petition setting out the foregoing facts and others, in reference to other cases, and also alleging that the note sued on had been presented, and payment refused. The petition was sworn to, and the fiat of the judge was, "that writs of *certiorari* and *supersedeas* issue, according to the prayer of the petitioner, upon his entering into bond and security, according to law, bond to be approved by the clerk." Bond was given in the penalty of

one hundred dollars, with John L. Allen security.   The condition of the bond was as follows: "Now, if the above bound Eli O. Loomis shall prosecute the said *certiorari* and *supersedeas* with effect, or in case he shall fail therein, shall well and truly pay to the said the Commercial Bank of Columbus, Mississippi, the said judgment and all costs and damages which shall be adjudged to be paid by the said Eli O. Loomis to the said the Commercial Bank of Columbus, Mississippi, then the above obligation to be void, &c."   *Certiorari* was issued with *supersedeas*, under which the justice certified the record before him into the circuit court. At the April term, 1838, of the circuit court, the plaintiff by attorney filed his declaration, on the two notes sued for in the court below, to which declaration there was no plea filed.   But the defendants, by counsel, moved the court to dismiss the *certiorari* and quash the proceedings on the following grounds, to wit:

1st.   Because there is no petition filed in the cause.

2d.   Because the petition, (if there be one,) does not show any injustice done between the parties, or any error in the court below; but, on the contrary, the alleged cause of error and injustice was an adjudication in accordance with the known principles of law.

3d.   Because the affidavit is insufficient.

4th.   Because the petition is directed to, and the order or *mandamus* for *certiorari* is made by one Hon. Stephen Adams, judge of the ninth judicial district, and not by the judge of this judicial district.

5th.   Because the bond is insufficient.

6th.   Because the order of the judge is not such as is required by law, and the clerk had no legal authority to issue said writ of *certiorari*.   Because, in the court below, the justice gave judgment against defendant before he could legally do so, and because said court below refused to consolidate the several causes pending between the same parties, and because the court had no jurisdiction in this case.

7th.   Because the writ of *certiorari* and bond are not called as is by law directed.

8th.   Because the record does not show that issue was joined

between the parties, and because the record does not show that the oath required by the statute was administered to the jury.

9th. Because the judge in his fiat or order has not directed the penalty of the bond, as required by law. Upon this motion the court dismissed the *certiorari* and quashed the proceedings. To which the plaintiff excepted, and his exception was allowed, signed, sealed, and made a part of the record. From the bill of exceptions, it appeared that the court decided on the ground *only* that the justice below had no *jurisdiction* of the case.

Hughes, for appellant.

The reasons assigned for dismissing the cause in the court below, are:

1st. Because there is no petition filed in the record. The record is an answer to this objection. It is true that the petition found in the record has more in it than was necessary. The defendants, if dissatisfied with it, should have moved to strike it out in the court below. This they did not do. ·

2d. Because the petition, (if there be one,) does not show any injustice done between the parties, or any errors in the court below; but on the contrary, the alleged cause of error and injustice was an adjudication in accordance with the known principles of law.

In this place, we will only treat upon the first branch of the inquiry involved in this reason, that of no showing of injustice, by reason of the judgment in the justice's court; the other branch of the inquiry will be discussed hereafter, when we come to what is supposed to be the main question. It is shown, most conclusively by the petitioner, that injustice was done him, he alleges that he demanded of the Bank payment of two notes of forty dollars each, that payment was refused, evidence of this refusal was endorsed by the officers of the Bank on the notes presented, on which the plaintiff sued; yet judgment was rendered against him. This was clearly unjust. The Bank owed a debt, refused to pay it, were sued, and were sustained in their refusal of payment. If in this there was no injustice, it will be difficult to suppose a case of justice. We understand that courts of justice are constituted for the purpose of enforcing right, where wrong has

been done, and that parties have a right to claim redress without sale, *denial,* or delay, and that when an inferior tribunal *denies,* the superior will enforce it.

3d. Because the affidavit is insufficient.

The affidavit is, "that the facts as stated and set forth in the petition, are true and correct." The swearing is positive and direct to the truth of the facts, and how otherwise it could be it is difficult to say.

4th. Because the petition is directed to, and the order or *mandamus* for a *certiorari,* is made by Hon. Stephen Adams, judge of the 9th judicial circuit, and not by the judge of this judicial district. To this we reply by referring to the Act of January, 1830, ch. 101, sec. 3; and January, 1833, ch. 2, sec. 5, in the first of which, is this provision:

"Which writ or writs (speaking of the writ of *certiorari,*) as necessity may require, shall be granted by the chief justice of the county court, or any of the judges of the superior courts of law in this state." And in the last, this, "and the *judges* of said courts, (speaking of the judges of the circuit courts,) *and each of them* shall have power, either in vacation or in term time, to grant writs of *habeas corpus, mandamus,* CERTIORARI, and of *error* and *supersedeas,* and all other remedial writs returnable according to law, into *any* or *either* of the said courts."

5th. Because the bond is insufficient.

The bond is in conformity with law. The act of January, 1830, just referred to, in the last sentence of the third section, is in these words, "The party in all cases giving bond, with approved security, as in cases of appeal from justices of the peace." Upon appeals from judgments rendered by justices of the peace, the condition of the bond is, for the payment of such judgment, and all costs and damages. See Revised Code, 24, 25, sec. 18.

The condition of the bond in this case is in the same words.

6th. There is nothing in this reason necessary to be answered, and we will not again transcribe it; only observing, that part of it will be replied to when we come to answer the main question, and as to another part, we say that the court could not dismiss the *certiorari* and quash the proceedings, because the justice refused

to consolidate. The record does not show that motion was made before the justice to that effect, and if it had been, the motion could not have prevailed.

7th. We do not know what the counsel in the court below called the *certiorari* and bond. The record before us, when it speaks, calls them *certiorari and bond.* What other name they have, we know not. But perhaps there is something—*a name,* and if they on the other side will stand god-father, we will hereafter endeavor to *call* the proper *name.*

8th. Because the record does not show that issue was joined between the parties, and because the record does not show that the oath required by the statute was administered to the jury. Here we are at issue as to the fact disclosed by the record. That part of the record of the justice is in these words, "March 10, 1838. This day came the parties by their attornies, and thereupon came a jury of good and lawful men, to wit: William Staunton, &c. who being duly sworn well and truly to try the issues between the parties, upon their oaths do say, &c." Such a thing as a formal issue in writing in a justices' court was never heard of. The pleadings in such a court are as they were in the early ages of the common law, *viva voce ;* one set up his claim, and the other denied its justice, or insisted that he was not bound to pay, and thereupon they were at issue: that is, they could go no further, and their peers had to be sworn to decide between them, and as in the present case sworn to try the issue.

9th. Because the judge in his fiat or order has not directed the penalty of the bond as required by law. There is no such law as that supposed by this reason. The law is that the party obtaining the *certiorari,* shall in all cases give bond with approved security; nothing is said about the penalty. A sufficient bond was contemplated, and the condition is prescribed. The security was approved by the clerk, for, upon the bond being executed, he issued the writ, which he would not have done if he had not approved the security. The penalty was sufficient to cover all costs, and is consequently a good bond, and sufficient security.

It is true, in cases where the law directs that a bond be given with security to be approved of by the judge or court, that the judge or court must approve, and a bond without such approval

[Loomis, Appellant *v.* The Commercial Bank of Columbus.] ·

will not be good. This is not such a case; the provision of the law is, that a bond shall be given with approved security, not security to be approved by the judge. See January, 1830, ch. 101, sec. 3. Revised Code, 24–5, sec. 18.

Having, as we believe, sufficiently answered the preliminary questions, we will now proceed to what is considered the main question.

It is gravely insisted, that the justice before whom this cause was tried had no jurisdiction. We presume it is not contended that the justice had not jurisdiction of the subject matter, that is, that he had not power to try a question of indebtedness between A and B. where the matter in controversy was forty dollars. But only, that the justice had no power by which the party, defendant here, could be brought before him. That the defendant being a corporation, that an appearance could not be obtained, and until appearance actually or constructively, no judgment could be rendered. At the outset we admit, that if the law was as it is at the common law, that the justice could not take jurisdiction, because he has no authority to issue a *distringas*. We admit the authorities relied upon on the other side to their fullest extent, but deny their application.

By the law as it stands in Mississippi, (see act of 1829, ch. 69, sec. 1, 2, 3,) the same kind of process is to be issued against bodies politic or corporate, as against natural persons, and the process may be served upon the president, presiding officer, cashier, secretary, or treasurer, &c., and when returned duly served, an appearance may be entered by the plaintiff, and when the defendant enters an appearance, the suit is to be proceeded in as in cases of personal actions against natural persons. This provision is full and ample and applies to all courts from which process may issue, and the only question which can be raised is the forum of a justice a court within the meaning of the act. We contend that it is. All of the acts of the legislature upon the subject of the power, authority and jurisdiction of justices of the peace, in terms not to be misunderstood, when giving them power to hear, try and determine pleas between parties, create a court, and that too to some if not to every extent, a court of record. As for instance, in the act of 1822, Revised Code, 23, *et seq.*, sec. 12, provides that the

56*

justice shall make entries in books, to be by him kept, of his pro-
ceedings. Section 15, directs copies to be made out by the justice
upon application of any person interested, of the *record* of his
judgment; and the act of November, 1830, ch. 81, directs the
holding of justices' *courts* once in every month, declares what
kind of evidence shall be received in justices' *courts*, and how a
jury shall come in justices' *courts*, see sec. 4, 5, 6, 7, 8, 13, 15, 16,
in all of which the same terms, when providing on various sub-
jects, is justices' courts; and it is most manifest, that by our law,
that to all intents and purposes they are as much courts as any
other tribunals in the state. The definition of the term court, as
well applies to them as to any other—a place where justice is ju-
dicially administered. There is the *actor, reus et judex*, the plain-
tiff and defendant, the subject matter of dispute, and the judge to
settle the dispute, invested with all power and authority, to enforce
his judgments, orders and decrees, by process to be executed by
the ministerial officers of the law. What other powers or attri-
butes do circuit courts have, which distinguish them from these
courts, we are at a loss to divine. We conclude that the justice
had jurisdiction of this case, not only of the subject matter, but
also of the parties contesting that subject matter.

Evans and Harrison, for appellees.

It may be remarked that there are thirty-one cases between the
same parties, all involving precisely the same points. And that
there is but one petition, as appears by the copy of the petition in
the commencement, and by the certificate of the clerk at the end
of the record, in this cause. See 4 Stewart & Porter, 409, Ala-
bama. De Sylav *v.* Henry. Passing over for the present the
other grounds for dismissal set forth in the defendant's motion in
the court below, let us consider the ground upon which the cir-
cuit court based its judgment of dismissal, to wit: the jurisdiction
of the justice of the peace.

A justice of the peace has no jurisdiction over a corporation.
In Jones and Crawford *v.* Reed, 1 Johnson's cases, 20, it is said
to be a clear and salutary principle, that inferior jurisdictions, not
proceeding according to the course of the common law, are con-
fined strictly to the authority given. They can take nothing by

implication, but must show the power expressly given them, in every instance. The sound rule of construction, in respect to the courts of justices of the peace, is, to be liberal in reviewing their proceedings, as far as respects regularity and form, and strict in holding them to the exact limits of jurisdiction, prescribed to them, by the statute. The same doctrine is set forth in Wells *v.* Newkirk, executor of Pierson, 1 John. Cases, 228. Way *v.* Casey, administrator, &c. 1 Caines' Rep's. 191. In Peacock *v.* Bell and Kendal, 1 Saunders Rep. 74, and notes, it is laid down as the rule for jurisdiction, "that nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears to be so; and on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court, but that which is so expressly alleged."

In the application of these principles to the case under consideration, much assistance may be derived from the above causes reported in Johnson's Cases and Caines' Reports.

Wells *v.* Newkirk, executor of Pierson, above cited, was a case of error on *certiorari* to a justice's court. The principal error assigned was that the defendant, who was plaintiff below, sued in the capacity of executor, and that a justice of the peace has no jurisdiction in any case wherein an executor or administrator was a party. This case arose under the statute of New York relative to the jurisdiction of justices of the peace, as it existed previous to the revision of the statutes in 1802. This statute gave jurisdiction to justices in all cases to a certain amount, saying nothing about the character of the parties, and in it a provision was inserted by which executors and administrators were exempted from costs when they should be plaintiffs. This statute furnishes the fairest possible ground for inference, in favor of the jurisdiction of the justice, if inference could in any case be made available. The extension of his jurisdiction to all cases of a certain amount and under, would seem to favor the inference that executors and administrators were embraced, and the provision of the act by which they, when plaintiffs, are exempted from the costs of suit, creates a strong presumption that the legislature intended that the executors and administrators might sue and be sued in the courts of a justice of the peace. But the court in that case

declares that notwithstanding executors and administrators are incidentally mentioned in the statute for the purpose of exempting them from costs when plaintiffs—yet as jurisdiction is not expressly given, it cannot be assumed by inference or implication. 1 J. C. 228 and 229. It is also laid down in that case as law, and it surely comports with justice and good sense, that if a court has not power to do complete justice between parties in every shape in which their right may be presented, it ought not to interfere. *Ibid.* 229. The court in the case just cited, said, that the statute from which the justice derived his authority, applies only to cases in which the parties act in their own rights, and not to cases in which they appear in *autre droit*. This is to be collected from the whole statute and the provisions contained in it.

Applying the same mode of interpretation to the statutes of Mississippi, relative to the jurisdiction and powers of justices of the peace, we discover much more forcible reasons for believing that the legislature contemplated persons in their natural capacity only. If we had that power (which is denied to us by all the authorities,) of aiding the jurisdiction of the justice by inference or implication, yet in the case now under consideration it would be of little avail, since all inference is positively contradicted by the general tenor of the statutes and by the provisions thereof.

In the New York statute, executors and administrators are mentioned, and under circumstances which strongly imply the intention of the legislature to subject them to the jurisdiction; but in our statute no mention is made of a corporation. The process given to justices by our statute is more inapplicable to a corporation, than the process given by the New York legislature is to persons acting in *autre droit*. The only process known to the law, by which a corporation can be compelled to appear, or to become a party to a suit, is by summons and distringas, the power to issue which, the statute has no where given to the justice. It cannot be contended that the summons given to the justice in the statute of 1822, (Rev. Code of Miss. p. 22, § —,) is that peculiar species of process which is the only mode by which a corporation can be made a party to a suit. Such a supposition is discountenanced by every provision in the statute. The legislature in the passing of that statute contemplated persons in their natu-

ral capacity only, and in giving to the justice the power of issuing the summons mentioned, conferred upon him simply the power to warn individuals to appear in his court, and not the power to issue that difficult process of summons and distringas, the peculiar province of which, is to compel the appearance of a corporation. The summons to a corporation must contain the whole cause of action with the same certainty which is required in a declaration. 1 Crompton's Practice; 1 Tidd, 116; 13 John. Rep. 127.

To suppose that the legislature intended by the summons mentioned in the statute, the summons against a corporation, would be resorting to inference of a far fetched character, for the benefit of the jurisdiction of a justice. But even this would be of little avail. If the justice had the power by express words of the statute, of issuing a summons and distringas, he could not then take jurisdiction of a case wherein a corporation is a party. The statute gives no authority but such as is applicable solely to causes wherein individuals are parties in their natural capacity. (Rev. Code of Miss. p. 22, § 9.) In § 10, p. 22, persons liable to be sued in the justices' court, are called house-holders and house-keepers, as residing in a captain's district, they have the right by making affidavit, that there is reason to believe that justice cannot be had in the captain's district in which the defendant resides, to move the cause to some other district; all of which seems wholly inapplicable to a corporation. We would scarcely be understood should we speak of a corporation as house-keeper, as a resident in a captain's district, or as capable of making an affidavit, as to its belief, &c. for the purpose of moving the trial of a cause, § 11, same page, is if possible still more conclusive to the same point. It imposes it upon the justice of the peace as a duty in cases where other satisfactory evidence cannot be had, "to examine on oath both plaintiff and defendant, or either of them, and to give judgment according to the statements made by the parties."

As this statute cannot be so construed as to impose an impossibility upon the justice of the peace, it must not be extended to any case wherein the justice cannot perform the duty imposed, of examining on oath both plaintiff and defendant. A corporation can neither be sworn nor examined. A suit therefore in which a corporation is a party, comes neither within the letter nor the spirit

of the statute, and a justice of the peace cannot be required to take cognizance thereof. Should he assume jurisdiction, he would violate that rule of reason and law cited in 1 J. C. 229, which forbids a court to interfere where it cannot do complete justice between parties. A corporation defendant can neither make affidavit for the removal of a cause, nor can it be examined on oath in its own behalf. In the justice's court it is therefore entirely at the mercy of the justice, however prejudicial, and of the plaintiff, however devoid of veracity. When plaintiff, its claim might be easily defeated by the oath of the defendant. When the statutes of New York were revised in 1801, a clause was added to the statute relative to the jurisdiction of justices of the peace, which in conformity to the doctrine in Wells *v.* Newkirk, executor of Pierson, above cited, denied jurisdiction in all cases wherein an executor or administrator was a defendant, but which was silent as to cases wherein they were plaintiffs. Hence under the supposition that the legislature intended that they might sue as plaintiffs, the case of Way *v.* Carey, administrator, &c. arose. 1 Caine's Rep. 191. The court in this case recognised the doctrine in Wells *v.* Newkirk, and decided against the jurisdiction of the justice of the peace. To the same point may be cited Jones &. Crawford *v.* Reed, 1 J. C. 20; Archbold Civ. Pl. 290; Winfield *v.* Powel, 2 Lord Raymond, 1310, 1311; Stammon *v.* Davis, Lord Raymond, 796.

The above reasons for excluding corporations from the jurisdiction of justices, apply with the same force to the statute of December, 1830, (see acts of December, 1830, p. 118, 119, § 4 & 6.) A justice of the peace cannot derive any power or jurisdiction by virtue of a statute passed subsequently to the statute which creates his powers, unless he is mentioned therein. All statutes which speak of courts generally, or of any courts, are construed as referring to the superior courts only. In 4 Black. Com. p. 272, § 8, it is said that an inferior court, having jurisdiction of all felonies and trespasses whatsoever, cannot assume jurisdiction over a newly created offence without express power given them by the statute which creates it. In Jones & Crawford *v.* Reed, 1 J. C. 20, the first reason given against the jurisdiction of the court is, that the act making joint debtors liable

[Loomis, Appellant, *v.* The Commercial Bank of Columbus.]

separately, is posterior to the act granting civil jurisdiction to justices, and makes no mention of them.   In 1 Hills' S. Carolina Rep. 226, it is said that where no mode of recovery is prescribed by the statute, the proceeding must be in the superior courts.   In Bacon's Abri. 558, 559, Courts D. 1., it is said that when a statute speaks of all or *any* of the king's courts, the superior courts at Westminster are alone intended *secundam excellentam.*   See also Burrows, 1040 ; 3 T. R. 444.   The act creating the Commercial Bank of Columbus, Mississippi, is posterior to the act granting civil jurisdiction to justices, and makes no mention of them. The act of incorporation gives the power of suing and being sued, in any court of law, &c.   The superior courts, according to the authorities, are alone intended.

But, independent of these authorities, we have, in the statute of January, 1829, p. 64, concerning suits against incorporations, positive evidence that the legislature never intended that justices should have jurisdiction over corporations.   By that act the mode of proceeding is prescribed, and its provisions are such as excludes the supposition that justices of the peace were intended. It provides that the writs and process shall be tested, that process shall be served at least twenty days previous to the return thereof, it provides that the plaintiff may enter an appearance for the defendant, that the court by general rule may prescribe the mode of proceeding, &c.   Here the process, the powers, and privileges conferred are different from any conferred on justices.— The process of a justice is not tested, but issues under his hand and seal ; the service of a warrant or summons must be ten days previous to its return.   There is no provision in any statute relative to justices, by which an appearance can be entered for the defendant.   The idea of prescribing by general rule the mode of proceeding in a suit is incompatible with a justice's court, which has not the power to prescribe rules, but must conform strictly to such rules as are prescribed for it.   The superior courts only were manifestly intended.   As the mode pointed out by this statute must be pursued in all suits against corporations, and as justices of the peace have not the power to pursue it, it follows that they can in no case where a corporation is a party assume jurisdiction.   It may be said that the 14th section of the 4th article of

the new constitution of Mississippi has ousted the circuit court of jurisdiction in all civil cases wherein the principal of the amount in controversy does not exceed fifty dollars, and that the justice's court must, from necessity, take jurisdiction over causes under that sum, when a corporation is a party, as such suits would otherwise be within the jurisdiction of no court. To which it may be answered, that the mere exclusion of a case from the jurisdiction of a superior tribunal does not, *ipso facto*, throw it within that of an inferior court. If this article of the constitution does oust the circuit court of jurisdiction, the inferior court cannot, as a matter of course, assume it, but must show the power expressly conferred: The argument *ex necessitate rei* is good in favor of a superior jurisdiction, but cannot be resorted to, to aid the powers of an inferior tribunal.

We have seen that the justice can claim jurisdiction over a corporation from none of the statutes, it is equally clear that he is not helped thereto by the constitution. The 23d section of the 4th article provides that his jurisdiction shall be limited to causes in which the principal of the amount in controversy shall not exceed $50. This conveys no definite power, but leaves it to the discretion of the legislature to prescribe the nature of the causes, and the amount of the sum in dispute, which shall fall within the cognizance of a justice of the peace, under the restriction only, that the amount in dispute shall not be over $50. , The legislature may, under this article, limit the amount to any sum under $50. Under this clause of the constitution the justice cannot claim jurisdiction over any case, but is left to the action of the legislature. It might with some plausibility be contended that the clause of the constitution relative to the jurisdiction of the circuit court, must be taken in conjunction with other parts of the same instrument, relative to inferior jurisdiction, and must be so construed with respect to the subject matter in controversy, and the character of the parties to the suit, as to leave within the jurisdiction of the circuit court all those cases wherein the inferior tribunals have not jurisdiction, both over the subject matter and the parties. An action of trover for the conversion of a promissory note of $20, and an action of detinue for an article of the value of $30, wherein the damages are laid to a sum under $50, cannot be said to be within the juris-

diction of a justice of the peace, because he has no jurisdiction over the subject matter.   In other cases he has not jurisdiction, because of the nature of the parties.   If the clause of the constitution be construed literally by itself, the action of trover and detinue above cited could not come under the cognizance of the circuit court, because the amount in controversy does not exceed $50.   This position, however, has no material bearing in the case under consideration, as it is false reasoning to assume the mere fact that a case is out of the jurisdiction of the circuit court, as proof that it lies within that of a justice of the peace.

In addition to the above may be added the authorities directly in point, of The Minister and Elders of the Dutch Church at Coxsackie *v.* Adams, 5 J. R. 347, and Hotchkiss *v.* The Trustees, &c. 7 J. R. 356.   In both of which it is decided that a corporation cannot be sued in the court of a justice of the peace.   In the latter authority it is said that a corporation may sue, though it cannot be sued before a justice's court.   But our statutes exclude the idea of a corporation being either plaintiff or defendant in a justice's court.

By the bill of exceptions in this cause, it appears that the court below considered that the want of jurisdiction in the justice of the peace, was ground sufficient to sustain its judgment of dismissal, and that it passed in silence the various other grounds set forth in the defendant's motion.   It is presumed, however, that this court will look into the whole record, and that if any such error should be discovered therein, as would prove fatal to the plaintiff's action in an appeal or writ of error directly upon it, this court will by its judgment prevent the plaintiff from further prosecuting this cause.  ·

The record shows the following errors, to wit:

1st.   There is but one petition in thirty-one cases.

2d.   The bond is not given in conformity with the petition and fiat of the judge; it is given in a cause not mentioned in the petition, nor in the writ of *certiorari*, it is given in a cause different from the one sent up.

3d.   The bond is not approved.

4th.   The *certiorari* is not issued in any cause mentioned in the petition, nor in the case mentioned in the bond.

5th. The case sent up by the justice of the peace is different from the case mentioned in the *certiorari*, and from that mentioned in the bond and from those in the petition.

By the statute of February, 1830, p. 172 and 173, it is provided, " That cases decided by a justice of the peace, may, upon good cause shown by petition supported by affidavit, be removed into any court having jurisdiction thereof, by writ of *certiorari* and *supersedeas.*" In all cases of *certiorari* to a justice of the peace, there must be according to the statute just cited, a petition showing good cause supported by affidavit. The circuit court cannot take jurisdiction of any case of *certiorari*, unless it is brought within its cognizance by the mode prescribed. A petition showing good cause, supported by affidavit, is therefore indispensable to give the circuit court jurisdiction of a *certiorari*.

Each case must show that it is within the jurisdiction of the court, otherwise it must be dismissed. The record must be complete within itself, which cannot be unless there is a petition filed, which is made a part thereof. A defect in the record of one case cannot be supplied or amended by borrowing from, or referring to the record in another case. In several suits by one plaintiff against different defendants there can be no doubt that each case would require its own appropriate petition, and that one petition could not embrace two or more cases. In several suits between the same parties, but in the courts of different justices of the peace, there can be as little doubt that each case would require its petition. If one petition can embrace the suits in the courts of different justices, the same petition would suffice to take up all the cases which the party might have, although in the courts of justices living in different counties. In this latter instance there would be a contest among the clerks of the different counties about the possession of the petition and fiat of the Judge, as each would claim them for the purpose of showing his authority for issuing the *certiorari*. No reason can be shown why one petition will suffice for several cases between the same parties, which may not also be used to prove that one petition would suffice in any of the above cases. The statute either requires a petition for each case, or it does not, and makes no distinction between cases wherein the parties are the same, and wherein they are different,

or whether they are in the same or in different counties. It is apparent that there must be a petition in each case. It follows, therefore, that thirty out of the thirty-one cases mentioned in the petition must fail. And as the plaintiff has not designated the case for which he intended the petition, he cannot sustain any one of them.

The bond given by the plaintiff is wholly defective and cannot sustain the *certiorari*. It is not given in a cause wherein E. O. Loomis is plaintiff and the Commercial Bank of Columbus, Mississippi, is defendant, but in a cause wherein the Commercial Bank of Columbus, Mississippi, recovered of E. O. Loomis a judgment for the sum of six dollars and fifty cents, which is no where mentioned in the petition nor in the *certiorari*, and is different from the case sent up by the justice.

The bond is also as to this case a nullity, because it is not approved by the court nor indeed by the justice of the peace.

By the act of February, 1830, p. 172, 173, the party taking up a suit by *certiorari* must, in all cases, give bond with approved security, as in cases of appeals from justices of the peace. By the act of March, 1833, p. 203, appeals are taken directly to the circuit court from the justice's court under the law regulating appeals to the circuit court. In appeals to the circuit court a bond must be given and must be approved by the court, conditioned to pay the judgment, interest, and damages which may be awarded in the circuit court. Revised Code, p. 78, sec. 24. The bond in question is not approved by any one, and it is not conditioned to pay the judgment, interest and damages which may be awarded in the circuit court, but to pay the judgment in the justice's court, which judgment would in fact be paid and discharged by the judgment of the circuit court, and therefore the bond is in fact conditioned to pay nothing.

The writ of *certiorari* is a nullity, because it is issued in a plea of debt of forty dollars and thirty-three cents, whereas no such case is mentioned in the petition. The cases in the petition are not represented to be pleas in debt, but are said simply to be brought on Bank bills of the denomination of twenty dollars, and of five dollars. No combination of twenty dollar or of five dollar bills will make the sum of forty dollars and thirty-three cents.

[Loomis, Appellant, *v.* The Commercial Bank of Columbus.]

Mr. Chief Justice SHARKEY delivered the opinion of the court.

This suit was founded on two bank notes for the sum of $20 each, and originated before a justice of the peace. It was taken to the circuit court by *certiorari,* and comes up by appeal from the judgment of that court, dismissing the cause. By the bill of exceptions it appears that the motion to dismiss was sustained solely on the ground that a justice of the peace has not jurisdiction over corporations. The record is accompanied by ably written arguments in support of the judgment of the court, which, were it not for our different view of the constitution and statute law, would be conclusive.

We do not hesitate to recognise the rule, that inferior courts can take no jurisdiction by implication or inference, but we cannot think the rule can have an application in the case before us. We assume the position as undeniably true, that all our courts, both superior and inferior, derive their jurisdiction from the constitution, and that they possess only such jurisdiction as is given, with the incidental powers necessary to carry out that jurisdiction. Wherever jurisdiction is given to an inferior court, it must also have all the incidental power necessary to accomplish the object of its creation. In addition to this, we maintain the further position, that all jurisdiction has been parcelled out and distributed by the constitution; none remains ungranted. It was obviously the design of the convention to create appropriate tribunals for the determination of every matter of litigation. If the argument in this case is based upon correct principles, this design has not been accomplished, and we should thus defeat by construction, the declared intention of the convention. The first section of the fourth article of the constitution declares the judicial power of this state to be vested in one high court of errors and appeals, and such other courts of law and equity as are thereafter provided for, and in the same article we find a portion of that power given to the circuit courts, and another portion to justices of the peace. The circuit courts have original jurisdiction in all matters civil and criminal, "but in civil cases only when the principal of the sum in controversy exceeds fifty dollars." This is obviously a limitation on the powers of that court. It has not, nor can it acquire by the aid of the legislature, jurisdiction in civil cases, when the amount

[Loomis, Appellant, *v.* The Commercial Bank of Columbus.]

is liquidated, under fifty dollars. The 23d section of the same article provides that a competent number of justices of the peace shall be elected in each county, and that "the jurisdiction of justices of the peace shall be limited to causes in which the principal of the amount in controversy shall not exceed fifty dollars." This is an express grant of jurisdiction, and it is a grant of that residue which was excepted out of the grant to the circuit courts, so that the two sections dispose of the entire jurisdiction of the state in all matters of contract. Jurisdiction is here given with reference to the subject matter, and not in reference to the persons or character of the parties litigant, and both may be said to be exclusive, the one where the demand exceeds fifty dollars, and the other when it is less than that sum. If a justice of the peace has not jurisdiction over corporations where the sum demanded is under fifty dollars, it must still be unvested; the circuit courts undoubtedly do not possess it. Such a construction would give a direct denial to the general grant of the judicial power of the state, contained in 1st section of the 4th article. In England, inferior courts are said to take nothing by implication, or without express grant, because the common law courts possessed general jurisdiction over the realm, and nothing could be taken from them or given concurrently, without an express act of parliament, and that which was not expressly given was supposed to remain with the original depository; but here both the circuit and justice's court derive their power from the same fountain, and to the one is given all that is denied to the other.

As justices of the peace have undoubted jurisdiction over the subject matter in all cases under fifty dollars, the only point further to be considered is, have they the means of carrying out that power? They do not proceed according to the course of the common law, and must therefore be governed by statutory regulations. Hence it is insisted that as they cannot issue the common law process against corporations, they have not jurisdiction over them. By the act of 15th December, 1830, which is declared to be in force by the act of the 2d of March, 1833, justices of the peace are declared to have jurisdiction on liquidated demands of every description where the sum does not exceed fifty dollars, and they are authorised to institute suits by summons or warrant, and

57*

proceed to judgment and award execution. This law is in substance the same as that which previously existed. The act of 1829, (Condensed Statutes, 188,) provides that all suits and process at law or in equity, thereafter to be issued against any body or bodies corporate, shall be tested and made returnable in the same manner as such writs and process are tested and made returnable, when issued against natural persons. By this act the common law in regard to process against corporations, is virtually repealed, not in its application to particular courts, but as it regards all courts and all cases. The law is as comprehensive as it could well be made, or at least is as much so as necessary. The obvious intention was to give the same process against corporations in all cases, that is given as against individuals. The provision is general as to " all suits and process either at law or in equity" to be issued against a body corporate. If justices had not the power before this act to issue process against corporations, it is amply conferred, suits before them being suits at law; and they may now proceed by summons or warrant as against natural persons, by having the process served as the statute requires. There is nothing in this act which can be construed to confine its operation to the circuit courts; its application is to " all suits and process," not to courts. Whatever tribunal or power may institute a suit or issue a process, is equally within its provisions. There is nothing in the last section which limits the general provision. Such parts of that section as may seem to contemplate action which appropriately belongs to the circuit court, were only designed to give practical operation to the statute in all courts; not to limit its operation to particular ones. We therefore think the objection to the jurisdiction of the justice unsustainable. The authorities introduced have not been noticed, because the whole question is embraced in the constitutional and statutory provisions.

This seems to have been the only point which received the adjudication of the court below, and we might here stop, as it is the only point which is fairly presented by the record. Several other reasons were assigned in the court below in support of the motion, but we are not called on to decide them, for this reason. They are objections to the sufficiency of the petition for *certiorari*, which does not constitute a part of the record. The law

[Loomis, Appellant, *v.* The Commercial Bank of Columbus.]

provides for the removal of causes from a justice of the peace to the circuit court, on good cause shown by petition, supported by affidavit. The petition is addressed to the judge to whom the application for the writ is made. It is a matter in *pais*, and it is for him to determine whether the cause shown is sufficient. If it is deemed so, he awards the writ; and it is the *certiorari* which brings the case up; not the petition. The law is only directory. If the petition had been in any way material, it should have been placed on the record by inserting it in the bill of exceptions; otherwise it is not a part of the case. The same may be said of the bond, which is also objected to. All matters which do not belong to the record proper, by being an essential part of the proceeding, must be placed on it by bill of exceptions, otherwise they will not be regarded, although they may happen to accompany the record.

The judgment must be reversed and cause remanded.